UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO: 21-82156-CV-SMITH

JAYCOBBY R. DUKES,

    Petitioner,

v.

RICKY DIXON,

Respondent.

_____/

## ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS

This case is currently before the court because Petitioner, Jaycobby R. Dukes has filed a pro se Petition for Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2254 ("Petition") [DE 1], challenging the constitutionality of his conviction and sentence entered in the Fifteenth Judicial Circuit, Palm Beach County, Case No. 50-2014-CF-006113-AXXX-MB. For its consideration of the Petition, the Court has received the State's Response [DE 9] to this Court's Order to Show Cause, along with a supporting appendix and state court transcripts [DE 10, 11].

The Petition presents three claims of ineffective assistance of counsel. Petitioner contends that counsel was ineffective for (1) failing to consult or retain a firearms expert; (2) failing to move to suppress prejudicial evidence on the ground of tampering or government misconduct; and (3) failing to object to the prosecutor's argument that the gun was a match on the ground that it denied Petitioner due process. (Pet. at 4-14.) This matter is ripe for review. After reviewing the pleadings, for the reasons stated in this order, the Petition is DENIED because Petitioner is not entitled to relief on the merits.

I.   **Procedural History**

Petitioner was charged with first degree murder with a firearm (Count One) and being a felon in possession of a firearm (Count Two). Prior to trial, counsel filed a motion to exclude a Lorcin 380 Firearm on the ground that its admission would be more prejudicial than probative because it could not be directly connected to the Petitioner or the shooting. (DE 10-1 at 31-33.) After a jury trial, Petitioner was found guilty of first-degree murder. (DE 10-2 at 29-30.) He was adjudicated guilty and sentenced to life imprisonment. (*Id*. at 32-36.) The State dismissed Count Two to allow Petitioner to begin serving his life sentence. (*Id*. at 38.) Petitioner appealed. (*Id*. at 44.)

On appeal Petitioner presented two issues arguing that the trial court erred (1) by prohibiting Petitioner from cross-examining Pamela Curry about her status as a confidential informant; and (2) by admitting evidence of the Lorcin gun. (*Id*. at 59-110.) The appellate court affirmed Petitioner's conviction in a per curiam opinion. (*Id*. at 157.)

Ultimately, after litigation over procedural issues, Petitioner filed an amended motion for post-conviction relief in the state trial court. (DE 103 at 4-26.) Petitioner argued that trial counsel was ineffective for (1) failing prepare a defense by failing to consult with or retain a firearms expert; (2) failing to move to suppress prejudicial evidence on the grounds of tampering or to object to the admission of the evidence at trial; (3) failing to object to the State's closing argument that the Lorcin 380 firearm was a match; and (4) failing to move for a judgment of acquittal on the specific issue of lack of sufficient evidence of premeditation. (*Id*.) Petitioner also argued that the cumulative effect of counsel's deficient performance denied him a fair trial. (*Id*.) The State was ordered to respond to the amended motion. (*Id*. at 28.) In its response, the State argued that Petitioner could not establish that counsel was ineffective under the standard set forth in *Strickland*

*v. Washington*, 466 U.S. 668 (1984). (*Id*. at 31-48.) The state court denied the amended motion to vacate by adopting the State's facts, legal analysis, and conclusions of law as its own. (DE 10-4 at 173.) Petitioner's motion for rehearing was denied. (*Id*. at 176-190.) Petitioner appealed. The denial of the motion was per curiam affirmed. (*Id*. at 237.)

## II. Summary of Fact Presented at Trial[1]

On May 13, 2014, Lennard Cobb was murdered in Belle Glade, Florida. (DE 11-1 at 489.) The murder was captured on a security camera of the M & M Fish Market. (*Id*. at 493.) The video of the shooting depicts the shooter as wearing a black shirt, blue jean shorts, a beanie style hat, and distinctive sneakers. (*Id*. at 1555.) The beanie style hat covered the shooter's face. (*Id*.)

Shatara Dukes, Petitioner's mother, lived just was one block from where the shooting occurred. (*Id*. at 759.) On May 12, Shatara picked Petitioner up from his home in Fort Pierce, Florida. (*Id*. at 820.) There was testimony that the Petitioner was around his mother's house in Belle Glade on the date of the shooting. (*Id*. at 761, 778.) About five minutes after the shooting, Petitioner was seen running. (*Id.* at 1238.) Petitioner was not wearing a shirt. (Id.)

Atanas Kitchen was walking home when he heard a gunshot. (*Id*. at 545-550.) As he was walking home immediately after the shooting Shatara Dukes picked him up. (*Id*. at 550-551.) Shatara was driving with Atanas in the back seat when she received a call from Petitioner. (*Id*. at 554.) Shatara turned the car around and picked up Petitioner. (*Id*. at 554.) When Petitioner got in the car, he was acting strange and had something that looked like a gun in his hand. (*Id*. at 557.) Shatara put Atana out of the car. (*Id*. at 560.)

Petitioner admitting killing Cobb to at least three people. Pamela Curry, a housemate of Petitioner, asked Petitioner why he had killed Cobb and he responded, "because he started

---

[1] This summary of the evidence is drawn from review of the trial transcripts found at DE 11-1. Specific references to the trial transcript are included below where relevant portions of the transcript are referenced.

threatening him, and he shot up his momma house." (*Id*. at 995.) Petitioner told Dajijuan Manuel, Curry's niece, that he was not going to get caught because he was wearing a mask. (*Id*. at 838.) Manuel and Curry felt threatened by Petitioner who asked them if they were going to call the police. (*Id*. at 838-839.)

A few days after the shooting, Shatara Dukes met with Sabrina Kitchen at Kitchen's house. (*Id*. at 1140.) Shatara was ripping up a black piece of cloth. (*Id*. at 1140-1141.) Shatara put the cloth, some sneakers, and other items in a bag which she then put in garbage can outside Kitchens' house. (*Id*. at 1141-1143.) When Kitchen spoke to the police on May 15, she told them about the bag. (*Id*. at 965-966.) The police retrieved the bag from the garbage can and found black cloth, a pair of sneakers, and a beanie with a brim. (*Id*. at 668-81.) DNA found on the cloth, sneakers, and beanie matched Petitioner's DNA. (*Id*. at 1301-1311.)

On June 4, 2014, police searched Petitioner's home pursuant to a search warrant and found a semi-automatic Lorcin handgun. (*Id*. at 716-721.) Forensic tests of the firearm found at Petitioner's home indicated some similarities to the bullet that killed Cobb but were ultimately inconclusive for a match to the bullet that killed Cobb. (*Id.* at 1412-1413.) Ballistic testing of the cartridges showed similarities to the casing found at the scene but were also inconclusive. (*Id.* at 1412-1415.)

While in custody at the Palm Beach County Jail, Petitioner spoke to another inmate about DNA evidence and mentioned that police had found a tee shirt in his mother's backyard. (*Id*. at 1502.) Petitioner admitted to this other inmate that he "whacked the guy in Belle Glade." (*Id*. at 1503.) Petitioner said he believed there was a video of the shooting but was not worried because his face was covered. (*Id*. at 1504.) Petitioner provided other details of the incident and his actions which were recounted by the witness at trial. (*Id*. at 1504-1506.)

### III.   Statute of Limitations and Exhaustion

The Respondent has conceded that the Petition is timely filed and that the three claims raised have been exhausted. Considering this concession, the Court will address the merits of the Petition.

### IV.   Standard of Review

A prisoner in state custody may not be granted a writ of habeas corpus for any claim that was adjudicated on the merits in state court unless the state court's decision was (1) "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or (2) "based on an unreasonable determination of the facts in light of the evidence presented" to the state court. 28 U.S.C. § 2254(d)(1), (2); *see Williams v. Taylor*, 529 U.S. 362, 405-06 (2000); *Fugate v. Head*, 261 F.3d 1206, 1215-16 (11th Cir. 2001).

A state court decision is "contrary to" or an "unreasonable application of" the Supreme Court's clearly established precedent within the meaning of § 2254(d)(1) only if the state court applies a rule that contradicts the governing law as set forth in Supreme Court case law, or if the state court confronts a set of facts that are materially indistinguishable from those in a decision of the Supreme Court and nevertheless arrives at a result different from Supreme Court precedent. *Brown v. Payton*, 544 U.S. 133, 141 (2005); *Williams*, 529 U.S. at 405-06. In the habeas context, clearly established federal law refers to the holdings of the Supreme Court's decisions as of the time of the relevant state-court decision. *Hall v. Head*, 310 F.3d 683, 690 (11th Cir. 2002) (citing *Williams*, 529 U.S. at 412). In adjudicating a petitioner's claim, however, the state court does not need to cite Supreme Court decisions and the state court need not even be aware of the Supreme Court cases. *See Early v. Packer*, 537 U.S. 3, 8 (2002); *Parker v. Sec'y, Dep't of Corr.*, 331 F.3d 764, 775-76 (11th Cir. 2003). So long as neither the reasoning nor the result of the state court

decision contradicts Supreme Court decisions, the state court's decision will not be disturbed. *Early*, 537 U.S. at 8. Further, a federal court must presume the correctness of the state court's factual findings unless the petitioner overcomes them by clear and convincing evidence. *See* 28 U.S.C. § 2254(e)(1); *Putman v. Head*, 268 F.3d 1223, 1241 (11th Cir. 2001).

More recently, the U.S. Supreme Court, in *Wilson v. Sellers*, 138 S. Ct. 1188, 1194 (2018), concluded there is a "look through" presumption in federal habeas corpus law, as silence implies consent. *See also Kernan v. Hinojosa*, 136 S. Ct. 1603, 1605-06 (2016) (*per curiam*) (adopting the presumption that silence implies consent but refusing to impose an irrebuttable presumption). Where the state court's adjudication on the merits of a claim is unaccompanied by an explanation:

> [T]he federal court should "look through" the unexplained decision to the last related state-court decision that does provide a relevant rationale. It should then presume that the unexplained decision adopted the same reasoning.

*Wilson*, 138 S. Ct. at 1192. In other words, if the last state court to decide a prisoner's federal claim provides an explanation for its merits-based decision in a reasoned opinion, "a federal habeas court simply reviews the specific reasons given by the state court and defers to those reasons if they are reasonable." *Id*. However, if the relevant state-court decision on the merits is not accompanied by a reasoned opinion, because it was summarily affirmed or denied, a federal court "should 'look through' the unexplained decision to the last state-court decision that does provide a relevant rationale." *Id.*

The presumption, however, may be rebutted by showing the state court's adjudication most likely relied on different grounds than the lower state court's reasoned decision, such as persuasive alternative grounds briefed or argued to the higher court or obvious in the record. *Id*. at 1192, 1196. "Where there are convincing grounds to believe the silent record had a different basis for its decision than the analysis followed by the previous court, the federal habeas court is free, as we have said, to find to the contrary." *Id*. at 1197.

6

Moreover, the Supreme Court repeatedly has admonished "[t]he petitioner carries the burden of proof" and the § 2254(d)(1) standard is a high hurdle to overcome. *See Bobby v. Dixon*, 565 U.S. 23, 24 (2011) (quoting *Richter*, 560 U.S. at 102-03 (quotation marks omitted)); *Cullen v. Pinholster*, 563 U.S. 170, 180 (2011) (acknowledging that § 2254(d) places a difficult burden of proof on the petitioner); *Renico v. Lett*, 559 U.S. 766, 777 (2010) ("AEDPA prevents defendants—and federal courts—from using federal habeas corpus review as a vehicle to second-guess the reasonable decisions of state courts."); *Woodford v. Visciotti*, 537 U.S. 19, 24 (2002) (§ 2254(d) "demands that state-court decisions be given the benefit of the doubt."); *see also Rimmer v. Sec'y, Fla. Dep't of Corr.*, 876 F.3d 1039, 1053 (11th Cir. 2017) (opining that to reach the level of an unreasonable application of federal law, the ruling must be objectively unreasonable, not merely wrong or even clear error).

Thus, state court decisions are afforded a strong presumption of deference even when the state court adjudicates a petitioner's claim summarily—without an accompanying statement of reasons. *Richter*, 560 U.S. at 96-100 (concluding that the summary nature of a state court's decision does not lessen the deference that it is due); *Gill v. Mecusker*, 633 F.3d 1272, 1288 (11th Cir. 2011) (acknowledging the well-settled principle that summary affirmances are presumed adjudicated on the merits and warrant deference and *citing Richter*, 560 U.S. at 100-101 and *Wright v. Sec'y for the Dep't of Corr.*, 278 F.3d 1245, 1254 (11th Cir. 2002)); *see also Renico* 559 U.S. at 773 ("AEDPA ... imposes a highly deferential standard for evaluating state-court rulings ... and demands that state-court decisions be given the benefit of the doubt." (citations and internal quotation marks omitted)).

Because the "AEDPA erects a formidable barrier to federal habeas relief for prisoners whose claims have been adjudicated in state court, federal courts can grant habeas relief only when

7

a state court blundered in a manner so well understood and comprehended in existing law and was so lacking in justification that there is no possibility fair-minded jurists could disagree." *Tharpe v. Warden*, 834 F.3d 1323, 1338 (11th Cir. 2016) (citations and quotations omitted). This standard is intended to be difficult to meet. *Richter,* 560 U.S. at 102.

Petitioner has raised three claims of ineffective assistance of trial counsel. The United States Supreme Court clearly established the law governing claims of ineffective assistance of counsel in *Strickland v. Washington*, 466 U.S. 668 (1984). *Strickland* requires a criminal defendant to show that: (1) counsel's performance was deficient and (2) the deficiency prejudiced him. *Id*. at 690. As to the first prong, deficient performance means performance outside the wide range of professionally competent assistance. *Id*. The judiciary's scrutiny of counsel's performance is highly deferential. *Id*. at 689. As to the second prong, a defendant establishes prejudice by showing that, but for counsel's deficient performance, there is a reasonable probability the outcome of the proceedings would have been different. *Id*. at 694. A reasonable probability is a probability sufficient to undermine confidence in the outcome of the proceedings. *Id*. A defendant must satisfy both the deficiency and prejudice prongs set forth in *Strickland* to obtain relief on an ineffective assistance of counsel claim.  *See Strickland*, 466 U.S. at 690. Failure to establish either prong is fatal making it unnecessary to consider the other. *See id.* at 697.

Combining AEDPA's habeas standard and *Strickland*'s two-pronged test provides the relevant inquiry in this case. To obtain habeas relief, a petitioner must show the state court "applied *Strickland* to the facts of his case in an objectively unreasonable manner" when it rejected his claims of ineffective assistance of counsel. *Bell v. Cone*, 535 U.S. 685, 699 (2002).

**V.     Discussion**

Petitioner has presented three claims in his petition. Each of the claims was presented to the state court and analyzed under the *Strickland* standard. As will be discussed herein, the state court properly applied *Strickland* and made reasonable findings of fact. Therefore, Petitioner is not entitled to relief on any of his three claims.

**A.     Failure to Consult a Firearms Expert**

Petitioner first argues that counsel was ineffective for failing to consult and retain a firearms expert. (DE 1 at 3-4.) He argues that counsel lacked the legal knowledge to expand questioning of the State's witness and lacked the knowledge to explain the significance of the State expert's inconclusive findings. (*Id*. at 4.) He contends that but for the lack of an expert there is a reasonable likelihood the outcome of the trial would have been different. (*Id*. at 6.)

This claim was presented in the Petitioner's motion to vacate in state court. In denying this claim the court adopted the State's response. In its response, the State argued that Petitioner could not establish that counsel was ineffective under either prong of the *Strickland* standard. (DE 10-3 at 40.) The State noted that counsel is not required to retain an expert where counsel cross examined the State's witness to establish the facts necessary to argue that the firearm found near Petitioner was not the murder weapon. (*Id*.) In doing so the State recounted the cross examination of the expert. (*Id*. at 38-40).

The State presented expert testimony attempting to link a gun found at Petitioner's residence to the murder. (DE 11-1 at 1377-1414.) On cross examination, counsel immediately established that the State's expert could not say either way if the Petitioner's gun fired the bullet that killed the victim. (*Id*. at 1415.) Counsel also established through cross examination that there are many guns with similar characteristics and the Lorcin 380 found at Petitioner's residence was

9

a "pretty common gun." (*Id*. at 1416-1417.) Regarding the actual projectile, counsel established that the State's expert could not match it to the gun. (*Id*. at 1419.) In his closing argument, counsel stressed the inconsistencies of the State's case. He referenced the testimony that someone else was identified as wearing the clothing that matched that worn by the shooter in the video and that Petitioner's clothing did not match the clothing worn by the shooter. (*Id*. at 1888-1889.) He noted that a witness identified Petitioner has having a "long gun" and that the other individual has a small gun. (*Id*. at 1889.) Counsel spent an extended amount of time discussing the ballistics evidence arguing that there was no evidence that the gun found at Petitioner's residence was the same gun that fired the fatal shot. (*Id*. at 1890-1893.)

As reflected in this testimony, counsel was able to establish that the expert could not match the gun in evidence to the bullet that killed the victim. Counsel then was able to argue the lack of evidence; particularly, he was able to argue that the gun found at the Petitioner's residence had not been proven to be the murder weapon. Thus, counsel's failure to obtain an expert to express the lack of connection did not rise to the level of deficient performance. Furthermore, given the other evidence of Petitioner's guilt, including his admission to several people that he shot the victim, Petitioner cannot establish that counsel's failure to retain a firearm's expert was prejudicial. This claim is denied as the state court's conclusion was based on reasonable factual findings and was not contrary to, or an unreasonable application of *Strickland's* test for ineffective assistance of counsel.

### B.      Failure to Move to Suppress Evidence on Grounds of Tampering

Petitioner next argues that counsel was ineffective for failing to move to suppress evidence on the ground that it was subject to tampering or governmental misconduct. (DE 1 at 8.) He contends that such a motion would have been granted and the evidence obtained would have been

excluded. (*Id*. at 10.) Petitioner concludes that if the evidence had been excluded, he would have been acquitted. (*Id*.)

Petitioner's claim concerns the bag containing the cloth, sneakers and beanie that was retrieved from the trash can outside Kitchen's home. (*Id*. at 8.) He argues that two police detectives gave conflicting testimony about who retrieved the bag from the trash can. (*Id*. at 10.) Petitioner contends that this allegedly conflicting testimony caused him to "express[] grave concerns about the handling of the evidence." (*Id*. at 8.)

This claim was presented in the Petitioner's motion to vacate in state court. In denying this claim the court adopted the State's response. In its response the State argued that this claim was speculative and conclusory. (DE 10-3 at 41.) The State also argued that Petitioner's claim must fail because he could not demonstrate that a motion to suppress would have been granted. (*Id*. at 42.)

Petitioner has not provided any sound basis for suppressing the evidence found in the trash can. His claim relies solely upon his contention that the two detectives presented conflicting testimony about how they came into possession of the evidence. The first detective to testify about the bag was Detective Goncalves. He testified that he while interviewing Sabrina Kitchens she directed his attention to a trash can outside her home that might contain evidence. (DE 11-1 at 915.) Goncalves went outside and opened the trash can where he found a white plastic bag. (*Id*. at 918.) The bag contained Nike sneakers with a white, black, and red checkered pattern. (*Id*. at 919.) Goncalves took photographs of the location. (*Id*. at 920-921.) The bag was placed in an evidence bag. (*Id*. at 925.) On cross examination Goncalves testified that he arrived at the home where the bag was found at approximately 8:30 p.m. and that he alone photographed the bag, although

11

Detective Noyas "might have popped out his head once or twice." (*Id*. at 947-951.) Goncalves identified Noyas hands as those holding the bag in one of the photographs. (*Id*. at 955.)

Later, Detective Noyas testified about the bag. (*Id*. at 1548-1549.) According to Noyas, Goncalves collected the bag as evidence. (*Id*. at 1549.) Noyas submitted the contents of the bag for DNA analysis. (*Id*.) Noyas testified that the shoes recovered in the bag closely resembled those visible in the video of the murder. (*Id*. at 1562.) Noyas testified that he and Goncalves arrived at Kitchen's house at around 7:38 p.m. (*Id*. at 1629.) According to Noyas testimony, he remained in the house while Goncalves went outside to check the garbage can. (*Id*. at 1631.) Noyas testified that he did not take any photos and did not hold the evidence bag while photos were taken. (*Id*.) Noyes thought that Goncalves showed him the contents of the bag at some point before they submitted it for forensic testing. (*Id*. at 1633.)

As described above, the bag contained a pair of Nike sneakers, a wool hat with a brim, and some black cloth. (*Id*. at 668-681.) DNA testing of the objects revealed that the Nike sneakers contained a mixture of two individuals DNA and the Petitioner was a major source of the DNA. (*Id*. at 1301.) A DNA mixture was also found on the cap, and, like the sneakers, Petitioner was a major contributor of the DNA profile. (*Id*. at 1310.) The cloth, which was pieces of a black shirt, also contained a DNA mixture of which Petitioner was a major contributor. (*Id*. at 1301-1310.)

Although there was a slight discrepancy in the testimony of the two detectives, the discrepancy, at best, might bring into question the chain of custody. However, such a concern would go to the weight of the evidence rather than its admissibility. Under Florida law "[t]o bar the introduction of otherwise relevant evidence due to a gap in the chain of custody, a defendant must show there was a probability of tampering with the evidence." *Davis v. Sta*te, 788 So. 2d 308, 310 (Fla. 5th DCA 2001). "A mere possibility of tampering is insufficient." *Id*. "Once the objecting

party produces evidence of probable tampering, the burden shifts to the proponent of the evidence 'to establish a proper chain of custody or submit other evidence that tampering did not occur.'" *Murray v. State*, 3 So. 3d 1108, 1115 (Fla. 2009); *Murray v. State*, 838 So. 2d 1073, 1082 (Fla. 2002) ("Relevant physical evidence is admissible unless there is an indication of tampering."). Here, Petitioner did not show a probability of tampering. In the absence of any such showing there is zero probability that the otherwise relevant evidence contained in the bag would have been suppressed or otherwise excluded. Because counsel cannot be ineffective for failing to pursue a meritless issue, Petitioner failed to establish deficient performance and this claim must be denied. The state court's denial of this claim was not contrary to, or an unreasonable application of the Supreme Court's standard for ineffective assistance of counsel as set forth in *Strickland*

### C. Failure to Object to Prosecutor's Comment about the Gun

Finally, Petitioner argues that counsel was ineffective for failing to object to the prosecutor's argument that the gun found near Petitioner was a match to the gun used in the murder. (DE 1 at 12.) He argues that counsel should have objected to the prosecutor's statement that: "The gun that [Petitioner] had matched the same type of gun that was used to kill the victim." (*Id*.) He concludes that the comment was outside the bounds of fair reply and that an objection would have been sustained and a mistrial declared. (*Id*. at 13.)

This claim was presented in the Petitioner's motion to vacate in state court. In denying this claim the court adopted the State's response. In its response the State had argued that Petitioner had taken the prosecutor's statement out of context. (DE 10-3 at 43.) The State also recounted the context of the statement. (*Id*.) The State contended that the prosecutor's comments constituted fair comment on the evidence and that the jury was instructed that what the attorneys say is not evidence. (*Id*. at 44.) The State also noted that Petitioner's counsel had used the inconclusive nature

13

of the firearm expert's testimony to argue that the gun in evidence had not been established as the murder weapon. (*Id*. at 43-44.)

"Ineffective assistance of counsel may be established where a defense counsel fails to object to the 'very serious instances of prosecutorial misconduct.'" *Fugate v. Head*, 261 F.3d 1206, 1223 (11th Cir. 2001) (quoting *Gravley v. Mills*, 87 F.3d 779, 785 (6th Cir. 1996)). A prosecutor's closing arguments only rise to that level where the remarks "so infected the trial with unfairness as to make the resulting conviction a denial of due process." *See Donnelly v. DeChristoforo*, 416 U.S. 637, 644 (1974); *see also Sneed v. Fla. Dep't of Corrs.*, 496 F. App'x 20, 28 (11th Cir. 2012) (citing *Donnelly*, 416 U.S. at 642–45). Petitioner must also establish that "there is a reasonabl[e] probability that, in the absence of the improper remarks, the outcome of the trial would have been different." *See Williams v. Weldon*, 826 F.2d 1018, 1023 (11th Cir. 1987).

Here Petitioner identifies one brief statement from the entirety of the prosecutor's closing argument. The statement, even standing alone, did not infect the trial with unfairness so that Petitioner was denied a fair trial. When viewed in context the statement was clearly proper comment on the evidence presented at trial. The evidence at trial established that the gun was found at Petitioner's residence. It does not appear that Petitioner is arguing that the prosecutor's claim that it was his gun was objectionable. To the extent that he may be, his claim is without merit as this was a fair comment on the evidence and asked the jury to reach a logical conclusion. Petitioner explicitly complains that the prosecutor improperly claimed that the gun matched the murder weapon. However, a review of the entirety of the prosecutor's closing argument reveals that the prosecutor's statement to this effect was merely a summary of the evidence. In the closing argument, the prosecutor recounted the testimony of the firearm expert. (DE 11-1 at 1880-1882.) The prosecutor acknowledged that the evidence surrounding the gun was circumstantial. (*Id*. at

1880.) The prosecutor argued, however, that there were too many coincidences, noting the similarity of the shell casings, that the gun was found right across from where Petitioner sleeps, and that the bullet that killed the victim had similarities to the bullet test fired from the gun found at Petitioner's home. (*Id*. at 1880-1881.) Later the prosecutor asked, "What are the chances that that gun matches the same caliber, same make, same model as the bullet used to take Lennard Cobb's life?" (*Id*. at 1882.) After discussing the other evidence, including the testimony of three witnesses that Petitioner admitted to the killing and the matching clothing with Petitioner's DNA, the prosecutor concluded by stating: "Is it possible that he is the most unlucky person in the world that his cellphone happened to ping all those towers and that he happened to have his mother tear up a different shirt and that his DNA is on all of that evidence and that the gun that he has happens to match the same type of gun that was used to kill the victim?" (*Id*. at 1885.) In context, this final statement was not objectionable as it was a fair comment on the evidence and asked the jury to make a logical conclusion.

The state court's denial of this claim was not contrary to, or an unreasonable application of the Supreme Court's standard for ineffective assistance of counsel as set forth in *Strickland*.

## V.     Certificate of Appealability

As amended, effective December 1, 2009, Rules Governing § 2254 Proceedings, Rule 11(a) provides that "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant," and if a certificate is issued "the court must state the specific issue or issues that satisfy the showing required by 28 U.S.C. § 2253(c)(2)."  A timely notice of appeal must still be filed, even if the court issues a certificate of appealability. *See* Rules Governing § 2254 Proceedings, Rule 11(b), 28 U.S.C. foll. § 2254.

After review of the record, Petitioner is not entitled to a certificate of appealability. "A certificate of appealability may issue ... only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). To merit a certificate of appealability, Petitioner must show that reasonable jurists would find debatable both (1) the merits of the underlying claims and (2) the procedural issues he seeks to raise. *Slack v. McDaniel*, 529 U.S. 473, 478 (2000); *see also Eagle v. Linahan*, 279 F.3d 926, 935 (11th Cir. 2001). Because the claims raised are clearly without merit, Petitioner cannot satisfy the *Slack* test.

Having considered the petition, the record, and being fully advised, it is hereby

**ORDERED AND ADJUDGED** that:

1. This Petition [DE 1] is **DENIED**.

2. No certificate of appealability shall issue.

3. The Clerk is directed to **CLOSE** this case.

**DONE AND ORDERED** in Fort Lauderdale, Florida, this 6th day of December, 2022.

RODNEY SMITH
UNITED STATES DISTRICT JUDGE

cc:
Jaycobby R. Dukes
B12509
Martin Correctional Institution
Inmate Mail/Parcels
1150 SW Allapattah Road
Indiantown, FL 34956
PRO SE

Jeanine Marie Germanowicz
Attorney General Office
1515 N Flagler Drive
Suite 900
West Palm Beach, FL 33401-3432
Email: crimappwpb@myfloridalegal.com